SLEDGE *v.* CORDELL, *et al.*

5-99                                                263 S. W. 2d 77

Opinion delivered December 14, 1953.

Rehearing denied January 18, 1954.

*Wm. C. Gibson* and *Clyde E. Pettit,* for appellant.

*Walter L. Brown,* for appellee.

GRIFFIN SMITH, Chief Justice. Appellant, who is appellee's niece, instituted this proceeding for an accounting.

Appellee was the sister of appellant's mother, Emily Cordell McCallie, who died in 1931. Emily was the wife of a Presbyterian missionary and lived with her husband in Korea from 1907 until 1930, then returned to the United States. Much of appellant's childhood was spent in Korea and she spoke a mixture of English and Korean.

Appellee and her sister inherited considerable property in Union County. Other property had been acquired by settlement with relatives. Emily executed a power of attorney to appellee in 1923 (recorded in 1924). Appellee acted as agent for Emily until Emily's death, and thereafter continued to act for appellant. A fiduciary relationship existed and this action was designed to require an accounting of matters handled by appellee touching the interests of appellant or her mother.

Numerous transactions by appellee as agent for Emily were recorded, the bulk being oil and gas leases on certain real estate. It was alleged that the proceeds of these leases were unaccounted for and that appellant did not receive any of the benefits. Other transfers were in fee. Some conveyances apparently made by appellant's parents were alleged to have been effectuated through forged deeds. Other violations of the fiduciary status were alleged.

The explanation was offered that many of the oil and gas leases reciting consideration were actually executed for the purpose of obtaining development and that no money was received. Limitation was pleaded. Much of the land allegedly conveyed or subject to transaction by appellee was asserted to be the property of appellee in her own right. Attempts to examine original instruments were thwarted by appellee's assertion that the deeds, original power of attorney, and other written documents were either no longer in her possession or could not be discovered after diligent search. A counterclaim was filed as to certain property and the prayer

was for confirmation of title against the claims of appellant.

The chancellor found no violation of the fiduciary relationship and dismissed the complaint. The relief sought by appellee was granted. This appeal challenges correctness of the chancellor's ruling.

The original controversy involved three tracts of land but nonsuit was entered as to all except 200 acres in Union county. This was originally deeded to appellee and her twin sister Emily by their mother as their share of the mother's property divided among her nine children. Appellant's mother died in 1931 and her father in 1945. Numerous conveyances were made by Emily under the power of attorney. Of the moiety owned by Emily, 50 acres were deeded to her sisters. The remaining 50 acres are in controversy. Several letters from Emily were introduced as well as an abortive will, all of which indicated that only 50 acres were claimed by Emily.

The evidence strongly supports the chancellor's finding that the 200-acre tract was, though undivided by partition, subject to an agreement between appellee and Emily whereby each was regarded as half-owner of the tract, and it was handled accordingly. In the years that followed the transfer creating title appellee received the income from the half recognized as hers and Emily the income from the remainder. Each deeded and conveyed various portions and taxes were paid according to the understanding.

No accounting was demanded by Emily. No administration was instituted after the death of Emily, nor was any guardian appointed for appellant. Prior to the death of appellant's father attempts were made to execute deeds partitioning the 200 acres in accordance with the understanding of appellee and Emily but each deed contained an error and the conveyance was never completed. In 1950, however, appellee deeded appellant Emily's share and at the time expected to have a deed executed by appellant conveying her interest in return,

but after delivery of appellee's deed appellant refused to perform. The chancellor required performance and partition consonant with his finding that the agreement was made to divide interests according to the prior understanding between appellee and Emily.

Explanation of the numerous transactions under the power of attorney which recited consideration was twofold: first, that appellee was not accountable to appellant for details of transactions prior to the death of appellant's mother; and second, that in most instances the recitation of consideration did not involve the actual payment of money but only related to the development of oil, gas and mineral, and profits were prospective. Objection was constantly made that attempts to hold appellee accountable must be predicated on prior showing of title in appellant.

The record is voluminous, the printed abstract containing 442 pages. The chancellor permitted each litigant full opportunity to develop pertinent factual data and multitudinous specific transactions were examined with care. The conclusions were:

(1) Conveyances joined by appellant supporting the existence of previous mutual division between Emily and appellee (alleged by appellant to be forged) were genuine. Any inference deducible from the failure of appellee to produce the original instruments for inspection was traversed by the fact that appellant went through a great many documents in the possession of appellee during a serious illness of appellee and although appellant denied having removed these documents from appellee's possession, the opportunity to have done so was present.

(2) Of the many transactions reciting consideration for conveyance of land by appellee in her fiduciary capacity, much of the property was found to be owned by appellee individually and in other instances actual payment of consideration to appellant was made. At trial proof of receipt was sometimes made by confront-

ing appellant with a cancelled check bearing her endorsement; and at other times appellant was found to have been one of several lessors. Those who had joined with her were found to have been paid, from which the chancellor was justified in concluding that the lessees paid appellant as well.

(3) Despite the fiduciary relationship, no misapplication of trust property occurred and appellee had fully accounted.

(4) Appellant, when most of the transactions occurred, was a mature and intelligent woman, which mitigated to some degree the obligation of appellee for maintaining continuous records in the meticulous manner ordinarily required where there are trust obligations.

Appellant stresses the fiduciary factor and in effect urges us to accept as the controlling element a rule which would place on a trustee or other fiduciary the burden of explaining in detail, supported by records, every transaction concerning the trust. Conversely, appellee takes the position that appellant has rested her case entirely on conjecture and that the record is bare of tangible evidence of any violation of trust.

Undoubtedly, the existence of a reliance relationship wherein the opportunity to profit by any aberration from the norm is ever-present, creates a situation differing sharply from dealings between persons unrelated by blood or confidential association. The obligation to account is ever-present and sincerity must be shown.

However, the trust relationship, while creating this unusual burden, does not in itself impose on the trustee the duty of making formal statements unless the nature of the business handled requires punctuality and precisian. Fortunately, most trust duties are discharged in the manner intended and required by law, otherwise the concept would soon become meaningless through abuse. The beneficiary, in attacking the trustee's actions, must present proof that a trust exists, that a violation has occurred or can be deduced from essentials

inferred but unexplained, and that the violation concerned property to which the trust attached.

Here, a great deal of effort was directed to appellee's failure to account in connection with property transactions, in respect of which appellant's right was not established. As to the bulk of such transactions the duty to account was dependent upon proof of forgery, —acts not proven to the chancellor's satisfaction. Proof of ownership of some of the other tracts was attempted through circumstance or assumption and other matters not akin to a record chain of title.

The chancellor dwelt at length on his judicial observation of the witnesses, particularly the chief litigants, as an aid in reaching conclusion as to weight that ought to be accorded the testimony of each. In this he exercised a prerogative entirely within his province—an advantage denied us on appeal. Resolving conflict between verbal conclusions by taking demeanor into consideration is a rule we have long recognized.

It cannot be said that the chancellor's findings are not in harmony with preponderating evidence.

Affirmed.

Mr. Justice McFADDIN concurs.